R. Muñiz de León & Co., (*S. en C.*), Plaintiff and Appellee, *v.* Melón Hnos. & Cia., (*S. en C.*), Defendant and Appellant.

No. 7723. Argued April 25, 1939.—Decided March 14, 1940.

*Angel A. Vázquez* for appellant. *V. Polanco de Jesús* for appellee.

Mr. Justice Hutchison delivered the opinion of the court.

Defendant, in an action for damages arising out of a wrongful attachment, appeals from an adverse judgment. A history of the case which gave rise to the present action may be found in *Melón Hnos. & Co., S. en C.,* v. *Muñiz de León,* 47 P.R.R. 87 and in *Melón Hnos. & Co.* v. *R. Muñiz, etc.* and *Villamil, Intervenor,* 49 P.R.R. 687. The district court overruled a demurrer for want of facts sufficient to constitute a cause of action. This is assigned as error. The brief for appellant points out that:

In none of the three causes of action did plaintiff allege malice, want of probable cause, bad faith, deceit, fraud or negligence when defendant obtained the wrongful attachment. In the first cause of action, plaintiff did not allege that it had opposed the attachment of its property. In the second cause of action plaintiff did not allege that it had opposed the closing of its place of business or that the same had been illegally closed by defendant. In the third cause of action plaintiff did not allege that it had requested permission to examine the attached books and to take or be furnished therefrom a list of the debtors or the amounts owing to plaintiff or that plaintiff had attempted without success the collection of such debts. *Verdejo* v. *Succrs. of Oliva & Co.,* 18 P.R.R. 101.

As a first cause of action plaintiff alleged that:

On December 13, 1932, plaintiff, a dealer in dry goods, was the owner of a mercantile establishment at No. 26 Palmer Street in Ciales, P. R. On that day Melón Hnos. & Co. S. en C. accompanied by the marshal of the District Court of Arecibo—with a writ of attachment obtained the day before in the District Court of San Juan in case No. 17,891, *Melón Hnos. & Co. S. en C.* v. *R. Muñiz de León*— entered the said mercantile establishment and attached all the merchandise which plaintiff had therein, closed the same, prevented plaintiff from continuing its business, carried away the keys and completely destroyed plaintiff's business As a result, plaintiff was obliged to apply to the District Court of San Juan, in the case wherein the writ of attachment had been issued, in order to obtain a dissolution of the attachment—which was ordered by the Supreme Court of Puerto Rico in a judgment rendered June 26, 1934. By virtue of the said writ of attachment Melón Hnos. & Co. had sold at public

auction and appropriated to its own use all of plaintiff's goods without payment therefor. The said goods and merchandise were reasonably worth $3,400.50. In order to obtain a dissolution of the attachment, plaintiff had been obliged to employ attorneys to whom it had paid $600. It had also paid $150 in court fees and traveling expenses of witnesses. Plaintiff had not been reimbursed by defendant.

As a second cause of action plaintiff alleged in addition to the facts already set forth, that:

Plaintiff's business had been established in Ciales for several years and the volume of business amounted to $12,000 a year with a well established credit and an annual net profit of not less than $2,000. Plaintiff had been deprived of this pofit from December 13, 1932, to the date of filing the complaint. This loss amounted to $4,000. Defendant had not paid plaintiff this amount.

As a third cause of action plaintiff alleged, in addition to the facts previously stated, that:

Melón Hnos. & Co. S. en C. on entering plaintiff's establishment accompanied by the marshal December 13, 1932, had without plaintiff's consent taken possession of the books kept by plaintiff in its establishment as a record of all transactions and especially as a register of the names of all its debtors and of the amounts owed by each. As defendant had closed the place of business and had left therein the books and had taken possession and disposed of the same, it had thereby prevented plaintiff from using them for the collection of its accounts with the result that by the lapse of time some of plaintiff's debtors had absented themselves and others had become insolvent, whereby plaintiff had suffered damages amounting to $1,500.

The facts so alleged were enough to show that the damages were caused by defendant's fault or negligence. It was not necessary to use the words fault or negligence. *Societé Anonyme, etc.* v. *Vallés,* 46 P.R.R. 631. The action was based on section 1802 of the Civil Code (1930 ed.). That section provides that: "A person who by an act or omission causes damage to another when there is fault or negligence shall

be obliged to repair the damage so done." It was not necessary to allege malice, want of probable cause, bad faith, or deceit.

The opinion in the case of *Verdejo* v. *Succrs. of Oliva & Co., supra*, speaks for itself. In the absence of any argument or further citation of authority, we shall not undertake at this time an independent investigation of ·other questions suggested as going to the sufficiency of the complaint, but not adequately developed in the brief for appellant.

■ Appellant submits that the district court erred in rendering judgment for a plaintiff who was without legal capacity to sue.

Defendant alleged on information and belief that prior to the filing of the complaint, plaintiff had ceased to do business by reason of the expiration of the term for which it had been constituted as a limited partnership. Later defendant admitted that plaintiff, on December 13, 1932, was a limited partnership, but set up, by way of defense, that the term for which the plaintiff partnership was constituted had subsequently expired, and that plaintiff, in consequence thereof, had ceased to exist and had lost its capacity to sue.

Assuming with appellant that the term for which the plaintiff partnership was constituted had expired after the date of the wrongful attachment and before the filing of the complaint herein, we are inclined to agree with appellee that, for the purpose of bringing an action for damages arising out of a tort committed before the expiration of the term, the existence of the plaintiff partnership should be deemed to have continued notwithstanding the expiration of the term. Without prejudice to further consideration of the question in future cases, we so hold. See section 147 of the Code of Commerce (1932 ed.); 2 Gay de Montellá, Código de Comercio 494, and cases cited; *Succrs. of L. Villamil & Co. S. en C.* v. *Quintana*, 45 P.R.R. 898.

■ Another contention is that the judgment is contrary to law, and is not sustained by the evidence.

Witnesses for plaintiff, instead of testifying to the payment of $600 to attorneys, as alleged in the complaint, testified that the attorneys had presented a bill for $600 which had not been paid. This bill was for professional services in the case wherein the writ of attachment issued. It did not specify the amount due for obtaining a dissolution of the attachment. The district judge had before him thirty-four documents from the record in the case of *Melón Hnos. & Co. S. en C.* v. *R. Muñiz de León.* The judgment for plaintiff included an item of $200 as attorneys fees for obtaining a dissolution of the attachment. There was sufficient evidence to sustain this part of the judgment. The fact that the district judge with the data before him was in a position to apportion the services rendered is enough to distinguish the instant case from *Muriente* v. *Terrasa,* 22 P.R.R. 686, cited by appellant.

Appellant also relies on *Sierra* v. *Santiago,* 48 P.R.R. 667, and authorities there cited in support of the general rule that a plaintiff, in an action *ex delicto,* cannot recover, as an element of damages, attorney's fees for services rendered in another action. As pointed out in the *Sierra* case, there are some exceptions to the general rule.

In *Díaz* v. *García,* 47 P.R.R. 448, this court said:

"The third assignment is that the district court erred in determining the amount of damages. One of the item alleged in the complaint, established by the evidence and allowed by the court was $100 disbursed by plaintiff as attorney's fees and expenses in his efforts as intervenor in the municipal court and on appeal to the district court in the action brought by Francisco García against Reyes García. The premise is that no attorney's fees were awarded as costs in that action and that none could have been awarded under our statute governing the matter of costs, because the amount involved was less than $500. The conclusion is that a party who has obtained no award of costs, including attorney's fees, and who has presented no memorandum of costs in one action cannot recover attorney's fees in an independent action. The answer to this argument

is that plaintiff herein was not seeking to recover attorney's fees as a part of the costs which might or might not have been awarded as such in the other action, but as damages caused by the act of defendant in concealing or disposing of property attached by plaintiff herein in his action against Reyes García and placed by the marshal in the custody of defendant as depositary."

5 Am. Jur. 212, section 1014, reads:

"The weight of opinion is that the costs of defending a wrongful or malicious attachment or garnishment, as distinguished from the action on its merits, including reasonable attorney's fees, constitute a proper element of damages in an action based upon the wrongful attachment or garnishment. The rule is applicable whether the action is brought on the bond or in tort for the wrongful attachment or garnishment. Recoverable attorney's fees are limited to those actually paid or contracted to be paid, and to those that are reasonable in amount. A recovery of such costs is sometimes provided for by statute. The right to such recovery may exist notwithstanding the plaintiff's cause of action is just, since the attachment may, nevertheless, be wrongful. Within the meaning of the terms 'costs' and 'expenses' are included disbursements in procuring the discharge of the attachment and the return of the property, and in obtaining testimony in the principal action, and the technical costs of that action on appeal as well as in the trial court.

" . . . . . . . . .

"In a few cases the allowance of any attorney's fees whatever for a wrongful attachment has been denied, the courts following the general rule by which the successful litigant is not ordinarily entitled to recover such fees, in the absence of special statute or stipulation. At least, the view is taken that this is the rule where there is no proof that the attachment was sued out through malice and without probable cause.

" . . . . . . . . .

"There is a difference of opinion as to whether recovery can be had for service in the appellate court. However, if it is necessary to defend against the attachment in the appellate court, there seems to be no good reason why attorney's fees for services rendered in relation to the attachment in that court as well as in the trial court should not be included as an item of damages for the wrongful attachment, and the authorities are to this effect."

See also the note to *St. Joseph Stockyards Co.* v. *Love,* (Utah), 25 A.L.R. 569, 579, 580; *Stumpf* v. *Pederson,* (Okla) 70 Pac. (2d) 101; *Taylor* v. *Wilbur* (Wash.) 16 Pac. 757.

We find no error in that part of the judgment which awarded as damages the item of $200 to cover the amount owing to plaintiff's attorneys for their services in obtaining a dissolution of the wrongful attachment.

 The district court included in its judgment an item of $1,000, instead of the $4,000 claimed in the second cause of action, as the amount of net profit which plaintiff would have derived from a continuation of its business but for the wrongful attachment. There was sufficient evidence, we think, to establish a loss of not less than $1,000.

In *Lowande* v. *Otero & Co.,* 15 P.R.R. 181, this court said:

"The actual damages recoverable for the wrongful suing out of an attachment are such as are the natural, proximate and legal result or consequence of the wrongful act."

In *Muriente* v. *Terrasa et al.,* 22 P.R.R. 686, 694, we said:

"Section 1073 of the Civil Code provides that indemnity for losses and damages includes not only the amount of the loss which may have been suffered, *but also that of the profit which the. creditor may have failed to realize.*

"Is it not logical to presume that had it not been for the attachment the plaintiff would have continued his business and made the same profits as before? In our opinion it is, and therefore we think that the amount earned previously during a like period of time and under identical circumstances may and should be taken as a basis for calculating the profits which the plaintiff failed to realize."

See also *Avilés* v. *Sons of Rafael Toro, Ltd.,* 27 P.R.R. 616.

Appellant points out that another attachment by a different creditor was levied a week later. The argument is that this fact should have been considered by the district court in mitigation of damages. Plaintiff's loss of profit

would have been sustained as a result of the wrongful attachment even if there had been no subsequent levy.

In 7 C.J.S. 661, section 507, we read (italics ours):

"Where property is seized under a void attachment, it has been held that a subsequent seizure thereof by attachment plaintiff under valid process, whether a second writ of attachment or an execution, and application of the property so seized to the payment of the owner's debt without his consent, cannot be shown either in defense or in mitigation of damages for the wrongful attachment, and this rule is not altered by the fact that an offer was made to return the property on discovering that the first attachment was invalid, although, under other authority, the rule is not so stringent and the fact that plaintiff caused a subsequent valid writ to be levied may be shown in mitigation of damages. Where property is taken by the wrongful act of one person, its subsequent seizure on process issued in favor of another against the owner, *by which it is appropriated to the payment of his debt,* is a circumstance which may be received in mitigation of the liability of the wrongdoer. If the property has been returned and detained by the owner, this may be shown in mitigation of damages, but not in bar of the action for the wrong."

In *Wehle* v. *Butler,* 61 N.Y. 245, we find this *dictum:*

"It has been considered in the courts how far property illegally taken, and subsequently seized and sold under process by a third party, who was a creditor of the owner, might be used as a defense in an action for the wrong. If the wrongdoer was not in connivance with the third party it has been held that the fact of the taking by the third party might be used in mitigation of damages. (Authorities.) But where the party who wrongfully takes the property procures it to be afterward seized and sold under process in his own favor, it affords him no protection in any form, and in this case that fact was made sufficiently apparent."

In *Wehle* v. *Spelman,* 25 Hun. (N.Y.) 99, the court said:

"When property is taken by the wrongful act of one person, its subsequent seizure under process issued in favor of another against the owner, upon which it is appropriated to the payment of his debt, is a circumstance which ordinarily may be received in mitigation of the liability of the wrongdoer. But to be attended with that

effect it is essential that the person under whose process such seizure may be made shall not be in colusion with the wrongdoer, or a participator with him in the commission of the original wrongful act.

"In this case these other firms acted in concert with the defendants in wrongfully seizing and appropriating the plaintiffs' property. They were equally culpable with the parties against whom the action has been prosecuted for the recovery of the value of the property. For that reason the attachments afterwards procured by them under which the property was again seized, could legally have no effect upon the extent of the defendants' liability. (Authorities.) The defendants were not in a situation in which they could mitigate the extent of their liability by showing this subsequent seizure or appropriation of the plaintiff's property. It never had been returned to her after it was first removed from her possession by the wrongful act of all these parties acting together. They then became liable for its value, and the plaintiff had her option to sue a portion or all of them, as she elected, and nothing they themselves could afterwards do would relieve them from the liability arising out of their original wrongful act."

In a note to *Tisdale* v. *Major,* (Iowa) 68 Am. St. Rep. 363, 276, we read:

". . . but if property is wrongfully taken under an illegal attachment, it may be shown in a suit, brought after the attachment is set aside, to recover the damages caused thereby, that the same property was subsequently seized under valid process issued in favor of another creditor of the owner and applied to the payment of his debt. *Wehle* v. *Spelman,* 25 Hun. 99; *Beyersdorf* v. *Sump,* 39 Minn. 495."

In these older cases, the action was usually for conversion. The present action has been brought under section 1802 of the Civil Code. This suggests the rule which governs in the matter of concurring causes. See: Bohlen & Harper on Torts, 253, section 109; 2 Restatement of the Law of Torts, 1161, section 432; a luminous article by Judge Peaslee of N. H. on "Multiple Causation and Damage", 47 Harvard Law Review 1127. We mention this aspect of the case only to indicate that it has not been overlooked and that more light on the subject in future cases will be welcome.

This is not a case of joint tort-feasors. It is not the case of a creditor who has sued his debtor, and attached the property of a stranger. Here, the owner of the wrongfully attached property was the real debtor. The creditor, through inadvertence or mistake, instead of naming as defendant the real debtor, a limited partnership, named one of the partners, obtained a writ of attachment, and attached partnership property as the property of the partner erroneously named as defendant. There was no collusion between this creditor and another who attached the same property a week later. Indeed, the creditor last mentioned was represented by one of the attorneys who represented the owner of the wrongfully attached property in obtaining a dissolution of the first attachment, and still represents that owner as plaintiff herein. Our conclusion is that the district judge should have considered the second attachment in mitigation of the damages sustained through the loss of net profits; and the item of $1,000 awarded as such damages will be reduced to $500.

In support of a contention that plaintiff, in setting forth the second cause of action *supra,* should have alleged—and at the trial should have proved—malice, want of probable cause, deceit and bad faith, appellant cites: *Acevedo* v. *Orr,* 100 Cal. 293; *Lacey* v. *Baudry,* 53 Cal. 693; 3 Bancroft's Code Pleading 2575; 4 Bancroft's Code Practice and Remedies 4687; 2 R.C.L. 896, sections 111, 113, 117 and 121; 6 C.J. 493 *et seq.; Hoffman* v. *Cuadrado,* 14 P.R.R. 573; *Paniagua* v. *Sobrinos de Ezquiaga,* 14 P.R.R. 776.

The court in the two California cases and Bancroft in the two sections cited by appellant were discussing the necessity of alleging and proving malice in actions to recover damages caused by injunctions wrongfully issued. Bancroft's Code Pleading in section 2465 says of wrongful attachments:

"According to many authorities, in the absence of statute permitting it, no action for wrongful attachment can be maintained

except on the bond or undertaking, unless malice and want of probable cause are alleged. In the latter event the action is in effect one for malicious prosecution and governed by the same rules. Some courts, however, recognize the right to sue for a wrongful attachment independent of the bond or undertaken or of malice and lack of probable cause. Where such rule prevails neither malice, want of probable cause nor the termination of the main action need be allege in order to recover the actual damages suffered. But if exemplary damages are to be recovered, both malice and lack of probable cause must be alleged."

The sections of Corpus Juris and of Ruling Case Law cited by appellant are more or less to the same effect.

None of the authorities cited held that the averment and proof of malice, want of probable cause, bad faith, or deceit is required in an action brought under a statute similar to section 1802 of the Civil Code to recover actual damages caused by a wrongful attachment. *Rivera* v. *Cintrón*, 24 P.R.R. 312; *González Clemente & Co.* v. *López et al.* 32 P.R.R. 824.

■ The judgment included an item for $600 instead of the $1,500 claimed in the third cause of action.

The books themselves were never attached as such. They were locked in a safe which was seized, and valued at $25 in the marshal's inventory. This safe, with other attached property, remained in Ciales for many months. When the District Court of San Juan about a year later, ordered the removal to San Juan of the Attached property left in Ciales, the custodian reported that according to information furnished by one of the partners, the books were in the safe; but this partner who had the combination refused to open the safe and no one else knew the combination. Plaintiff never attempted to regain possession of the books nor requested the privilege of access to them. Witnesses for plaintiff had no difficulty in stating the names of debtors and approximately the amount of indebtedness in each instance. Yet, plaintiff made no effort to collect any of these debts. Assuming the sufficiency of the facts stated as a third

cause of action—as to which see 2 Joyce on Damages, 1254, section 1095 and *Goodbar* v. *Lindsley,* (Ark.) 11 S.W. 577 —we agree with appellant that the evidence was insufficient to sustain the award of $600 as damages arising out of plaintiff's inability to collect outstanding debts.

Another contention is that the district court erred in awarding damages notwithstanding the fact that defendant had alleged and proved that the attachment in question had been admitted, confirmed and validated by plaintiff's subsequent acts whereby plaintiff was estopped to claim damages by reason of such attachment.

The only authority cited in support of this contention is 6 C.J. 433, section 1004. The brief for appellant assumes but fails to show that the subsequent acts of plaintiff amounted to waiver. Aside from any question of *res judicata,* appellant's argument—if a question and answer can be regarded as argument—fails to convince us that there was any waiver.

We agree with appellant that plaintiff should not have been awarded costs including attorneys' fees.

Appellant's final contention is that the district court erred in overruling defendant's motion for a rehearing and a motion for a new trial. Further consideration of the questions involved would serve no useful purpose.

The judgment appealed from will be modified by striking therefrom the award as to costs and attorneys' fees and by reducing the amount thereof from $1,800 to $700.00 and, as modified, affirmed.